UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNIVERSAL TRUCKLOAD, INC.,
a Foreign Profit Corporation,

       Plaintiff,                      Case No. 2022-cv-

                                          Hon.

v.

JOSEPH BRIDGE, an individual,

       Defendant.

---

Courtney L. Nichols (P75160)
Attorneys for Plaintiff
PLUNKETT COONEY
38505 Woodward Avenue, Ste. 100
Bloomfield Hills, MI  48304
(248)  594-6360
cnichols@plunkettcooney.com

---

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff, UNIVERSAL TRUCKLOAD, INC., through undersigned counsel, and for its Verified Complaint for Injunctive and Other Relief ("Verified Complaint") against Defendant Joseph Bridge ("Bridge"), states as follows:

## PARTIES, JURISDICTION, VENUE

1. Plaintiff, Universal Truckload, Inc. (hereinafter referred to as "Universal Truckload" or "Company") is a foreign profit corporation incorporated in Delaware, which is licensed to and conducts business throughout the State of Michigan, including Oakland County.

2. Upon information and belief, Defendant Bridge is an individual who is an American citizen and resides in Winston Salem, North Carolina.

3. The amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

4. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Universal Truckload is headquartered in this venue, conducts business in this venue, and has been damaged by Bridge's tortious actions in this venue.

6. In addition, the parties expressly consented to the jurisdiction of this Court and approved this venue in their contract, titled "Confidentiality and Non-Solicitation Agreement" (referred to herein as the "Agreement"). A true and accurate copy of the Agreement is attached to this Complaint as **Exhibit 1** and incorporated herein by reference.

7. This Court also has personal jurisdiction over Defendant as he is an individual doing business in the State of Michigan and/or with Michigan persons and/or entities.

8. In addition, this Court has personal jurisdiction over Defendant because Defendant tortiously acted, caused tortious acts to be done, and caused consequences of tortious acts to occur, within the State of Michigan.

## GENERAL ALLEGATIONS

9. Universal Truckload restates the allegations contained in paragraphs 1 through 8 above as if fully set forth at this point.

10. Universal Truckload is a full-service transportation provider that provides total and complete trucking operations, consisting of over fifty (50) company-managed terminal locations spanning the entire North American geography.

11. On March 10, 2016, Universal Truckload offered Bridge employment to work as a Regional Business Development Manager, which Bridge accepted by written signature on March 11, 2016 (**Exhibit 2,** Offer Letter).

12. Bridge's employment with Universal Truckload as a Regional Business Development Manager was contingent upon him signing the Agreement.  (**Exhibit 1**)(**Exhibit 2**).

3

13. On March 11, 2016, Bridge signed the Agreement and commenced his employment with Universal Truckload. *Id.*

14. Pursuant to the Agreement, Bridge agreed that during his employment and for a period of twenty-four months after his employment has terminated, for any reason, he will not:

> …either solely or jointly with, or as manager or agent for, any person, corporation, trust, joint venture, partnership, or other business entity, directly or indirectly, approach or solicit for business, accept business from, divert business from, or otherwise interfere with any Company relationship with, any person or entity (or legal successor to such person or entity) that [Bridge] had any direct contact with while employed by the Company and that: (a) has been a customer of the Company at any time within the six (6) month period prior to [Bridge's] termination; or (b) to whom the Company had made a proposal within the six (6) month period prior to [Bridge's] termination. (**Exhibit 1,** p. 2, ¶3).

15. Additionally, pursuant to the Agreement, Bridge agreed that during his employment and for a period of twenty-four months after his employment has terminated, for any reason, he will not:

> …directly or indirectly, solicit for employment, hire, or offer employment to, or otherwise aid or assist any person or entity other than the Company, in soliciting for employment, hiring, or offering employment to: (a) any employee of the Company or any independent contractor engaged by the Company; or (b) any former employee or independent contractor of the Company who was employed, or engaged, by the Company

4

within six (6) months before or after the cessation of [Bridge's] employment. (**Exhibit 1**, p. 2, ¶4).

16. Bridge expressly recognized that any breach of the Agreement would likely result in irreparable injury to the Company. (**Exhibit 1**, p. 2, ¶7(A)).

17. Bridge agreed that Universal Truckload shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction, either in law or equity, to obtain damages for any breach of the Agreement, to enforce the specific performance by Bridge of the Agreement, and/or to enjoin Bridge from activities in violation of the Agreement. (**Exhibit 1**, p. 2, ¶7(B)).

18. Bridge was employed in his role as Regional Business Development Manager for more than five years, during which time Bridge developed personal and professional relationships with the Company's customers, clients, accounts, business associates, and personnel.

19. Bridge expressly acknowledged that the relationships which he developed in connection with his employment with Universal Truckload were irreplaceable and extremely valuable to Universal Truckload. (**Exhibit 1**, p. 1, ¶1(C)).

20. As such, Bridge acknowledged that Universal Truckload is entitled to take appropriate steps to ensure that (i) its employees, like Bridge, do not

make improper use of confidential, proprietary, and/or trade secret information gained during the course of their employment with Universal Truckload; and (ii) that no employee or competing entity gains an unfair competitive advantage over the Company. (**Exhibit 1**, p. 1, ¶1(D)).

21.     On May 14, 2021, after more than five (5) years in his role, Bridge voluntarily resigned from his position as Regional Business Development Manager for Universal Truckload.

22.     After he resigned from Universal Truckload, Bridge accepted employment with and remains employed by Transport Investments, Inc., a carrier group that is competitive with Universal Truckload.

23.     Subsequent to Bridge's resignation, Universal Truckload learned that Bridge has continuously and deliberately violated the terms of the Agreement by soliciting covered individuals and entities to provide services and patronage to Bridge and Transport Investments, Inc., all to the detriment of Universal Truckload.

24.     Specifically, Bridge has solicited Erick La Torre to work as an agent with Bridge and Transport Investments, Inc.  Erick La Torre was covered by the non-solicitation obligations of the Agreement Bridge signed because La Torre was formerly a sub-agent for Augusto Ciuffardi, an agent for Universal Truckload.

25. Bridge has solicited David Clark to work as an agent with Bridge and Transport Investments, Inc. David Clark was an agent for Universal Truckload pursuant to a written contract, and therefore covered by the non-solicitation obligations of the Agreement Bridge signed with Universal Truckload.

26. Bridge has solicited Craig Morris to work as an agent with Bridge and Transport Investments, Inc. Craig Morris was an agent for Universal Truckload pursuant to a written contract, and therefore covered by the non-solicitation obligations of the Agreement Bridge signed with Universal Truckload.

27. Bridge has solicited Jim McDonald to work as an agent with Bridge and Transport Investments, Inc. Jim McDonald was an agent for Universal Truckload pursuant to a written contract, and therefore covered by the non-solicitation obligations of the Agreement Bridge signed with Universal Truckload.

28. Bridge has solicited Robert Braunstein, transportation manager at West Marine, a client of Universal Truckload, to divert business from Universal Truckload in favor of Bridge and Transport Investments, Inc.

29. Bridge could only commit these continuous and deliberate violations of the Agreement by utilizing the relationships he developed because of and in connection with his employment with Universal Truckload.

30. On November 5, 2021, Universal Truckload served a Final Notice Legal Demand to Bridge, demanding that Bridge cease and desist from soliciting Universal Truckload's business, including clients, customers, account representatives, or employees, as outlined in paragraphs 3 and 4 of the Agreement. (**Exhibit 3**, Final Notice Legal Demand).

31. In disregard of the Final Notice Legal Demand, Bridge continued to violate the terms of the Agreement by continuing to solicit and engage in business with covered individuals and entities under the Agreement.

32. On March 14, 2022, undersigned counsel served a letter to Bridge, reminding Bridge of his obligations under the Agreement and notifying Bridge that Universal Truckload had received numerous and credible reports that he had solicited and engaged in business with the Company's clients, customers, and/or accounts with whom he had direct contact, as well as employees and contractors engaged by the Company, which constituted violations of provisions 3 and 4 of the Agreement. (**Exhibit 4**, Letter Regarding Violation of Confidentiality and Non-Solicitation Agreement).

33. On March 18, 2022, Bridge's attorney responded to the March 14, 2022 letter, denying that Bridge had solicited or attempted to divert any business away from Universal Truckload that would be in violation of the Agreement. (**Exhibit 5**, Bridge Response Letter March 18, 2022).

34. On March 28, 2022, undersigned counsel responded to Bridge's counsel and informed him that Universal Truckload has credible information that since Bridge's departure from the Company, Bridge has solicited former agents of the Company and/or provided services through Transport Investments, Inc. to a number of Company clients with whom he directly worked while employed by Universal Truckload, including: Erick La Torre, David Clark, Craig Morris, Robert Braunstein, and Jim McDonald. (**Exhibit 6**, Universal Truckload Response Letter March 28, 2022).

35. Bridge has refused to sign a Declaration attesting to his attorney's representations that he has not solicited the individuals identified herein in violation of the Agreement.

36. Universal Truckload has not released Bridge from his obligations under the Agreement, or otherwise consented to him soliciting personnel, clients, customers, or accounts of Universal Truckload with whom Bridge had direct contact while employed by Universal Truckload.

37. Universal Truckload has no adequate remedy at law for the actions of Bridge since the harm it has suffered, and will continue to suffer, in connection with the loss of its competitive edge, customer good will and fair competition, is incapable of exact proof.

38. Universal Truckload will suffer irreparable harm as a result of Bridge's unlawful conduct unless and until Bridge is restrained from soliciting the Company's personnel, clients, customers, or accounts with whom Bridge had direct contact while employed by the Company in violation of the Agreement.

39. Pursuant to the Agreement, the prevailing party in an action to enforce this Agreement shall be entitled to reimbursement for its costs and reasonable attorney's fees. (**Exhibit 1**, p. 2, ¶7(F)).

## COUNT I – BREACH OF CONTRACT – RESTRICTIVE COVENANT

40. Plaintiff restates the allegations contained in paragraphs 1 through 39 above as if fully set forth at this point.

41. The Agreement constitutes a valid, enforceable contract.

42. Specifically, the Agreement prohibits Bridge from soliciting clients, customers, or accounts with whom he had direct contact while employed with Universal Truckload, for a period of twenty-four (24) months after the termination of his employment.

43. The Agreement also provides that Bridge is prohibited from soliciting personnel of Universal Truckload, for a period of twenty-four (24) months after the termination of his employment.

44. Bridge has violated the Agreement attached hereto as **Exhibit 1** in that he solicited former agents of the Company and/or provided services through Transport Investments, Inc. to a number of Company clients with whom he directly worked while employed by Universal Truckload.

45. Upon information and belief, Bridge has solicited Erick La Torre, David Clark, Craig Morris, and Jim McDonald to work as agents with Bridge and on behalf of Transport Investments, Inc.

46. Further, upon information and belief, Bridge has solicited and provided services via Transport Investments, Inc. to Robert Braunstein and his employer West Marine, a former client of Universal Truckload covered by the Agreement.

47. As a result of Bridge's conduct, Universal Truckload has suffered irreparable injury, and there is imminent danger that Universal Truckload will continue to suffer irreparable injury for which there is no adequate remedy at law.

48. Universal Truckload is entitled to injunctive relief against further breaches of the Agreement.

49. Universal Truckload further has suffered damages as a direct result of these breaches which include, but are not limited to, lost profits and attorneys' fees.

### COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

50. Plaintiff incorporates by reference paragraphs 1 through 49 above as if fully set forth at this point.

51. Bridge intentionally and without justification interfered with Plaintiff's business and contractual relationships by approaching or soliciting for business, accepting business from, diverting business from, or otherwise interfering with Plaintiff's contractual relationships with clients, customers, or accounts.

52. Bridge's intentional and improper conduct was and is *per se* wrongful, or was done without justification and for the sole purpose of interfering with Plaintiff's contractual relationships.

53. Universal Truckload has, and will continue to be, injured by Bridge's intentional and improper acts of tortious interference.

54. Universal Truckload's damages include, but are not limited to, contractual damages, lost profits and attorneys' fees.

**REQUEST FOR RELIEF**

For all the foregoing reasons, Plaintiff Universal Truckload, through its attorneys, Plunkett Cooney, specifically requests that the Court enter judgment against Defendant Joseph Bridge as follows:

A. **LEGAL RELIEF**

　1.　Compensatory, economic, noneconomic, exemplary, and punitive damages in whatever amount it is found to be entitled; and

　2.　An award of interest, costs, and contractual attorney fees.

B. **DECLARATORY AND EQUITABLE RELIEF**

　1.　An order out of this Court preliminary and permanently enjoining Defendant from violating the Agreement;

　2.　An order out of this Court preliminary and permanent enjoying Defendant from tortiously interfering with its contractual relationships;

　3.　Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

**VERIFICATION PROCESS**

Mark Limback, first being duly sworn, deposes and states that he is the President of Universal Truckload, Inc., Plaintiff in the above-titled action; that he has read the foregoing Verified Complaint and knows the contents thereof;

and that the statements of fact above are true to the best of his knowledge, information, and belief.

_____
Mark Limback

Subscribed and sworn to before me,
this 28 day of April, 2022.

Raven Shefferly
_____ Notary Public
County of Macomb, State of MI
Acting in the County of Macomb
My Commission Expires: 9/12/27

RAVEN SHEFFERLY
Notary Public - State of Michigan
County of Macomb
My Commission Expires Sep 12, 2027
Acting in the County of Macomb

Respectfully submitted,

/s/ Courtney L. Nichols
Courtney L. Nichols (P75160)
PLUNKETT COONEY
Attorney for Plaintiff
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 594-6360
Fax: (248) 901-4040
cnichols@plunkettcooney.com

Dated: April 28, 2022