UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNIVERSAL TRUCKLOAD, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH BRIDGE,<br><br>    Defendant. | Case No. 22-cv-10988<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

I.    <u>Introduction</u>

Universal Truckload, Inc. commenced this diversity breach of contract action against its former employee, Joseph Bridge, for violating provisions in his confidentiality and non-solicitation agreement.

Before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 24-25). The parties filed their associated responses and replies. (ECF Nos. 35, 37, 40-41). They also submitted supplemental briefs. (ECF Nos. 54-55, 57-58). The Court will decide the motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1) Bridge's motion for summary judgment is granted, and (2) Universal's cross-motion for summary judgment is denied.

II.     Background

    A.     *Factual History*

Universal is a Delaware corporation that is headquartered in Michigan. (ECF No. 14, PageID.96, ¶¶ 1, 5). The company provides trucking operations throughout North America with over 50 company-managed terminal locations. (*Id.*, PageID.97, ¶ 10). Bridge worked in several positions for Universal and its predecessors. (ECF No. 25-2, PageID.1404, ¶¶ 3-5). In December 2013, Bridge signed a confidentiality and non-solicitation agreement (the "Agreement") with Universal's predecessor, Great American Lines, Inc. (ECF No. 14-4, PageID.117-19). The Agreement prohibited, among other things, the solicitation of Great American's customers and personnel for a period of 24 months after Bridge left the company. (*Id.*, PageID.118).

In 2016, Great American merged with several other logistics companies to form Universal. (ECF No. 25-2, PageID.1404, ¶ 6). Universal promoted Bridge to Director of Business Development in March of that year. (ECF No. 14-3, PageID.113; ECF No. 25-2, PageID.1404, ¶ 6). In that job, Bridge managed Universal's Southeast and Mid-Atlantic regions "with occasional responsibility" for other regions. (ECF No. 25-2, PageID.1404, ¶ 6).

2

Bridge resigned from Universal in May 2021 to become Vice President of Agent Development at what is now Transport Investments, Inc.[1] (*Id.*, PageID.1404, ¶ 7; ECF No. 24, PageID.1010 n.1).  On May 14, 2021, Bridge sent a transition email to Universal's president, Mark Limback, outlining "suggestions for work load [*sic*] and current projects." (ECF No. 24-3, PageID.1039).  Under a section titled "Pipeline Prospects to Follow Up," Bridge identified Erick LaTorre as a recruitment prospect who worked as an independent contractor for one of Universal's agents. (*Id.*).  He also listed West Marine Products, Inc. as a current Universal customer and designated Robert Braunstein, West Marine's Director of Transportation, as the company's primary contact. (*Id.*, PageID.1040).

After Bridge's departure, Universal discovered messages mistakenly forwarded to Bridge's Universal email account showing that he continued doing business with West Marine and Erick LaTorre on behalf of Transport Investments. (ECF No. 24-5, PageID.1053, 1055, 1057-62, 1065, 1071-81).  The parties exchanged cease-and-desist correspondence. (ECF No. 14-4-14-7, PageID.115-35).  This action followed.

---

[1] Transport Investments conducted business under different aliases throughout the relevant periods covered in this litigation.  It also operated alongside several affiliated entities.  For clarity's sake, this opinion and order will refer to all these businesses as "Transport Investments" collectively.

3

B.   *Procedural History*

Universal filed suit against Bridge alleging causes of action for breach of contract (Count I) and tortious interference with contractual relations (Count II). (ECF No. 14, PageID.104-07, ¶¶ 40-54). Both claims assert that Bridge improperly solicited LaTorre, West Marine, and three former Universal agents – David Clark, Craig Morris, and Jim McDonald. (*Id.*, PageID.101-02, ¶¶ 24-28). The parties now cross-move for summary judgment. (ECF Nos. 24-25).

III.   Legal Standard

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV.   Analysis

A.   *Breach of Contract (Count I)*

A Michigan breach of contract claim requires proof "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v. Bennett*, 303 Mich. App. 767, 774 (2014). Universal contends that Bridge violated the Agreement when he solicited LaTorre to work as an agent for Transport Investments and actively

diverted West Marine's business away from Universal to Transport Investments. The Court will address both these arguments in turn.

    1.    LaTorre

As with any breach of contract claim, the analysis begins with the operative text. *See Skanska United States Bldg. v. M.A.P. Mech. Contrs.*, 505 Mich. 368, 377 (2020); *see also Frankenmuth Mut. Ins. Co. v Masters*, 460 Mich. 105, 111 (1999). The Agreement's personnel non-solicitation clause reads:

> 4.    <u>COVENANT NOT TO SOLICIT PERSONNEL</u>
>
> Employee agrees that, during his/her employment, and for a period of twenty-four (24) months after his/her employment has terminated, for any reason, Employee will not, directly or indirectly, solicit for employment, hire, or offer employment to, or otherwise aid or assist any person or entity other than the Company, in soliciting for employment, hiring, or offering employment to: (a) ***any employee*** of the Company or ***any independent contractor*** engaged by the Company; or (b) ***any former employee or independent contractor*** of the Company who was employed, or engaged, by the Company within six (6) months before or after the cessation of Employee's employment.

(ECF No. 14-4, PageID.118, ¶ 4) (emphasis added).

According to its plain meaning, the clause solely forbids the recruitment of two classes of laborers: (1) current and former Universal employees, and (2) current and former independent contractors whom Universal already engaged. Since the terms "employee" and "independent contractor" are left undefined, the Agreement requires the application of Michigan law to ascertain their import. (ECF No. 14-4,

5

PageID.119, ¶ 7.C) ("The validity, interpretation, and performance of this Agreement shall be governed by, and construed in accordance with, the laws of the State of Michigan . . .").

Michigan courts "may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Holland v. Trinity Health Care Corp.*, 287 Mich. App. 524, 527-528 (2010). Those courts almost universally adopt the Random House Webster's College Dictionary (1992) definition of "employee" as "a person who has been hired to work for another." *Rakowski v. Sarb*, 269 Mich. App. 619, 626 (2006); *see also Bandeen v. Pub. Sch. Emples. Ret. Bd.*, 282 Mich. App. 509, 517 (2009). They also define an "independent contractor" as "one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished." *Buckley v. Prof'l Plaza Clinic Corp.*, 281 Mich. App. 224, 233 (2008); *see also Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich. App. 543, 553 (1992).

LaTorre does not fall within either category. Universal never hired LaTorre to perform work on its behalf – so he's not an employee. And LaTorre never contracted to perform work for Universal while "carrying on an independent business" – so he's not an independent contractor.

The unrebutted evidence instead shows that LaTorre operated his own agency and worked for a Universal *agent* as an "independent contractor consultant." (ECF No. 25-5, PageID.1452, ¶ 5; *see also* ECF No. 24-3, PageID.1039; ECF No. 25-2, PageID.1407, ¶ 15). He brokered "freight loads" and "consult[ed] Universal on its business account" with specific Universal clients. (ECF No. 25-5, PageID.1452, ¶ 5). And Bridge attempted to negotiate an agency agreement with LaTorre on Universal's behalf, but he discontinued those efforts upon resigning from the company. (ECF No. 24-12, PageID.1347-48, Tr. 87:18-88:1).

LaTorre's relationship with Universal could best be summed up as one step removed from the type of worker covered under the personnel non-solicitation clause – he acted as an independent contractor to one of the company's *own* independent contractors. Since LaTorre never worked as a Universal employee or independent contractor (1) he falls outside the scope of the personnel non-solicitation clause, and (2) Bridge could not have violated that provision even if he did "solicit" or "otherwise aid or assist" in soliciting LaTorre to become an agent for Transport Investments. As a result, summary judgment must be awarded to Bridge on the portion of the breach of contract claim involving LaTorre.

2.   West Marine

Regarding West Marine, the Agreement's customer non-solicitation clause reads:

7

>3.  COVENANT NOT TO SOLICIT CLIENTS, CUSTOMERS, OR ACCOUNTS WITH WHOM EMPLOYEE HAD DIRECT CONTACT
>
>Employee agrees that, during his/her employment, and for a period of twenty-four (24) months after his/her employment has terminated, for any reason, ***he/she will not***, ***either solely or jointly*** with, or as manager or agent for, any person, corporation, trust, joint venture, partnership, or other business entity, ***directly or indirectly***, ***approach or solicit*** for business, ***accept*** business from, or ***otherwise interfere*** with any Company relationship with, any person or entity (or legal successor to such person or entity) that Employee had any direct contact with while employed by the Company and that: (a) has been a customer of the Company at any time within the six (6) month period prior to Employee's termination; or (b) to whom the Company had made a proposal within the six (6) month period prior to Employee's termination.

(ECF No. 14-4, PageID.118, ¶ 3) (emphasis added).

Assuming Bridge violated this provision (and it appears from the evidence attached to Universal's supplemental brief that he most assuredly did), the remaining question is whether a reasonable jury could conclude that Universal "suffered damages as a result of" his breach. *Dunn*, 303 Mich. App. at 774.

Causation of damages is an "essential element" to any breach of contract claim. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014). A plaintiff may not recover damages that are based on speculation or conjecture. *Doe v Henry Ford Health Sys.*, 308 Mich. App. 592, 602 (2014). Damages are recoverable only where they are the direct, natural, and proximate result of the defendant's breach. *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 601 (2014).

8

"Uncertainty" regarding "the amount of damage *caused by* the breach of contract is fatal" to the claim. *Van Buren Charter Twp. v. Visteon Corp.*, 319 Mich. App. 538, 551 (2017) (cleaned up) (emphasis added). "The proper measure of damages for a breach of contract is the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich. App. 47, 54 (2006).

Universal's proffer of damages cannot meet this causation standard as a matter of law. Limback testified that Universal suffered declining revenues from West Marine's business after Bridge's resignation. (ECF No. 24-12, PageID.1327, Tr. 67:6-10, 17-21; *see also* ECF No. 37-15, PageID.2194, Tr. 45:6-20). Universal's financial records confirm that revenues from West Marine decreased over this same period – from $1,140,779.28 in 2020, to $953,117.05 in 2021, to $514,850.36 in 2022.[2] (ECF No. 24, PageID.1028-29; ECF No. 37-14). Limback attributed this drop to Bridge's specialized knowledge of the rates Universal charged West Marine as well as Transport Investment's ability to capitalize on that knowledge to undercut them. (ECF No. 24-12, PageID.1327-28, Tr. 67:22-68:4). But Universal fails to bolster this theory with evidence.

---

[2] Universal asserts that its revenues from West Marine "tumbled to $0" in 2023. (ECF No. 37, PageID.1889). The company's own financial records contradict this representation. (ECF No. 37-14) (indicating that 2023 annual revenue from West Marine totaled $95,430.36 as of February 17, 2023).

9

Universal's executives and agents testified, time and again, that they could not link the company's revenue dip to Bridge's solicitation of West Marine's business. (ECF No. 28, PageID.1578-79, Tr. 60:17-61:4; ECF No. 51-1, PageID.2333, Tr. 85:15-18; ECF No. 52-1, PageID.2361, 2364-65, 2369-71, Tr. 35:6-23, Tr. 38:21-39:2, Tr. 73:15-74:2, Tr. 75:8-18; ECF No. 53-1, PageID.2382, Tr. 24:12-17). And their testimony appears to show that Universal made no sustained efforts to cultivate its relationship with West Marine after Bridge's departure. (ECF No. 28, PageID.1591, Tr. 73:3-9; ECF No. 51-1, PageID.2325-26, Tr. 42:8-43:12; ECF No. 52-1, PageID.2365-66, Tr. 39:11-40:2; ECF No. 53-1, PageID.2384-85, 2387, Tr. 26:16-27:14, Tr. 34:4-18).

Universal could have established a genuine factual question as to causation by showing that it lost a head-to-head bidding contest with Transport Investments over specific West Marine shipping routes (or what the logistics industry calls "lanes"). It certainly attempts to employ this methodology in the company's supplemental brief.

There, Universal juxtaposes a "Dedicated Transportation Quote" that Bridge forwarded to West Marine in July 2021 on Transport Investments' behalf, charging $2.25 per mile on a lane from Rock Hill, South Carolina to Orlando, Florida, with a similar quote that Bridge forwarded to West Marine in January 2021 on Universal's behalf, charging $2.85 per mile on a lane from Rock Hill to "FL." (ECF No. 55-2,

10

PageID.2445; ECF No. 55-3, PageID.2528). The comparison is supposed to illustrate to a reasonable factfinder that Bridge did in fact solicit West Marine's business on a lane where Transport Investments directly competed with Universal; that Transport Investments undercut Universal's bid with Bridge's specialized knowledge of its rates; and that Transport Investments won the bid. But two evidentiary gaps belie this supposition.

*First*, the "Dedicated Transportation Quote" Bridge forwarded to West Marine on Transport Investment's behalf specifies "Orlando, Florida" as the destination. (ECF No. 55-2, PageID.2445). His earlier quote on behalf of Universal just says "FL," without a designated city of destination or associated zip code. (ECF No. 55-3, PageID.2528). So a reasonable factfinder is unable to discern whether the routes are actually identical.

*Second*, and perhaps most importantly, the evidence does not show whether Transport Investments successfully concluded its bid for West Marine's Orlando, Florida lane. Emails between Bridge and Braunstein demonstrate that Transport Investments and West Marine had still not reached an agreed quote as late as September 2021. (ECF No. 55-2, PageID.2464). And the record is unclear as to whether they ever did. That means Universal's case for damages is at best correlative, *i.e.*, the decreased revenues from West Marine's business *coincide* with Bridge's resignation and the months following his departure. Correlation, however,

11

does not equate to causation. *Cf. Craig v. Oakwood Hosp.*, 471 Mich. 67, 93 (2004) ("It is axiomatic in logic and in science that correlation is not causation."); *West v. Gen. Motors Corp.*, 469 Mich. 177, 186 (2003) ("a temporal relationship, standing alone, does not demonstrate a causal connection").

Universal disagrees. It maintains that the non-breaching party may establish causation solely through circumstantial evidence. (ECF No. 37, PageID.1888). None of the three cases Universal references actually support this view. They instead address circumstantial evidence in the context of demonstrating civil *liability* rather than the *causation* between a contractual breach and the resultant damages. For instance, both *Libralter Plastics v. Chubb Group of Ins. Cos.*, 199 Mich. App. 482, 488-89 (1993) and *Rochester Midland Corp. v. Enerco Corp.*, No. 08-98, 2009 U.S. Dist. LEXIS 46103, at *63 (W.D. Mich. Jun. 1, 2009) are Michigan breach of contract cases that discuss circumstantial evidence as it relates to liability only. And *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764-65 (6th Cir. 2008) is even farther afield because it falls outside the realm of contract law altogether – the decision addresses the role of circumstantial evidence in establishing state civil rights law violations.

Because Universal cannot prove, as a matter of law, that its diminished West Marine revenues are "the direct, natural, and proximate result" of Bridge's violation of the customer non-solicitation clause, summary judgment must be awarded to

12

Bridge on this portion of the breach of contract claim as well. *Henry Ford Health Sys.*, 308 Mich. App. at 601 (quotation omitted).

      B.      *Tortious Interference with Contractual Relations (Count II)*

Turning to the tortious interference claim, some housekeeping is in order before addressing the merits. Although Universal framed this cause of action as one for tortious interference with a business relationship at the summary judgment stage, the amended complaint denominates the claim as one for "tortious interference with contractual relations." (ECF No. 14, PageID.106). And Universal expressly references the elements of that cause of action in the amended complaint. (*Id.*, ¶ 52) ("Bridge's intentional and improper conduct was and is *per se* wrongful, or was done without justification and for the sole purpose of interfering with Plaintiff's contractual relationships.").

Since tortious interference with a contract or contractual relations is a cause of action under Michigan law that is "distinct" from tortious interference with a business relationship or expectancy, *Health Call v. Atrium Home & Health Care Servs.*, 268 Mich. App. 83, 89 (2005), and because Universal clearly denominated the cause of action as one for "tortious interference with contractual relations" in the amended complaint, the Court will treat the claim as it is styled in the amended complaint, *i.e.*, a claim for tortious interference with a contract. *See Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 279, 283 (2013) (reversing the circuit court's

13

misreading of a "claim as one for tortious interference with a business relationship or expectancy, rather than tortious interference with a contract" where the plaintiff "specifically alleged tortious interference with a contract in the complaint"); *see also Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (affirming the district court's refusal to entertain a claim raised for the first time at the summary judgment stage); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

To establish a claim for tortious interference with a contract, the plaintiff must show (1) the existence of a contract, (2) a breach of the contract, (3) an unjustified instigation of the breach by the defendant, and (4) damages. *Knight Enters.*, 299 Mich. App. at 280; *see also* M. Civ. J.I. 125.01 (adding damages as a necessary element).

With respect to the third element – the defendant's unjustified instigation of the breach – the plaintiff must allege "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v. Genesys Health Care Systems*, 263 Mich. App. 364, 382 (2004) (quotation omitted). "A wrongful act per se is an act that is inherently wrongful or an act that can never

14

be justified under any circumstances." *Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 367 (2005) (quotation omitted). In the event the "defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* The core inquiry is whether the defendant "unjustifiably instigated or induced" a third party to breach its contract with the plaintiff. *Knight Enters.*, 299 Mich. App. at 281.

      1.    LaTorre

Universal cannot show that Bridge tortiously interfered with a contractual relationship between itself and LaTorre. To begin with, there is no evidence that a contract or agreement existed between LaTorre and Universal. LaTorre attested that one of Universal's own agents, Augusto Ciuffardi, engaged him as an "independent contractor consultant." (ECF No. 25-5, PageID.1452, ¶ 5). In that role, LaTorre assisted Ciuffardi with "brokering freight loads and consulting Universal on its business account with TJ Maxx." (*Id.*). Bridge confirmed that LaTorre "ran his own agency," that LaTorre "brokered freight loads with another Universal agent" (presumably Ciuffardi), and Bridge testified that he had "identified" LaTorre "as a *prospective* agent for Universal." (ECF No. 25-2, PageID.1407, ¶ 15) (emphasis added).

Not to mention, in his May 14, 2021 departure email to Limback, Bridge designated LaTorre a "Pipeline Prospect" who "is currently running 3 of his own

15

trucks under Evans" and noted that LaTorre's "contract [with Evans] is up in June." (ECF No. 24-3, PageID.1039). And Limback acknowledged that Bridge had "made a proposal to Erick LaTorre," that he was working on LaTorre "becom[ing] an agent" for Universal, and that "there was an agreement that they were working through" so LaTorre could "become an agent" for Universal. (ECF No. 24-12, PageID.1347, Tr. 87:19-25). All these unrebutted statements demonstrate that LaTorre never had a contractual relationship with Universal.

Absent any proof of a contract or agreement with LaTorre, Universal cannot possibly show that a breach occurred or that Bridge "unjustifiably instigated or induced" a breach. So the portion of the tortious interference claim involving LaTorre cannot withstand summary judgment.

        2.     West Marine

Universal likewise fails to adduce enough evidence to support is entitlement to relief on the West Marine allegations. As with LaTorre, the record is devoid of any specific contract(s) or agreement(s) between Universal and West Marine. Universal does not point to a single contractual provision that West Marine may have breached. While West Marine may have rejected Universal's bids to service certain lanes on account of cost, there was never a legal arrangement in place that barred West Marine from entertaining and accepting more competitive offers. (ECF No. 37-16, PageID.2197). And obviously, without evidence that West Marine breached any

16

contract or agreement, Universal cannot show that Bridge "unjustifiably instigated or induced" West Marine to breach one. *See Knight Enters.*, 299 Mich. App. at 281. No reasonable jury could, therefore, decide that Bridge tortiously interfered with a contractual relationship between Universal and West Marine.

      C.     *Remaining Allegations (Clark, Morris, and McDonald)*

Lastly, Bridge moved for summary judgment on the portions of each cause of action pertaining to Clark, Morris, and McDonald. (ECF No. 25, PageID.1382-83, 1393; ECF No. 25-2, PageID.1407-08, ¶¶ 18-20). Universal did not respond substantively in opposition to that part of Bridge's motion.[3] (ECF No. 37). The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see also Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir. 2021) (same).

---

[3] Universal conjectures in a footnote to its response brief that additional discovery could show that Bridge earned commissions from these agents during his employment with Transport Investments. (ECF No. 37, PageID.1881 n.2). The problem for Universal is that this observation does not substantively rebut the evidence Bridge offered to show that he did not solicit Clark, Morris, and McDonald to work for Transport Investments. (ECF No. 25, PageID.1382-83). And even if Universal did obtain this information through discovery, it is unclear how Bridge's commission earnings from these agents would show that he *solicited* them to work or provide services for his new employer.

17

Because Universal abandoned the portions of the claims involving Clark, Morris, and McDonald those allegations must be dismissed. Accordingly,

IT IS ORDERED that Bridge's motion for summary judgment (ECF No. 25) is granted.

IT IS FURTHER ORDERED that Universal's cross-motion for summary judgment (ECF No. 24) is denied.

IT IS FURTHER ORDERED that Bridge's motion to strike Universal's supplemental brief (ECF No. 55) is denied as moot.

Dated: March 26, 2025

s/ Robert J. White
Robert J. White
United States District Judge